IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ERIC DANIELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:14-cv-156-CSC |
| | ) (WO) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

On May 6, 2011, Plaintiff Eric Daniels protectively filed a Title II application for a period of disability and disability benefits and a Title XVI application for supplemental security income, alleging he became disabled on March 1, 2011. (R. 19, 134-44, 169). The applications were denied initially and on reconsideration (R. 71-84, 87-88). Daniels then requested a hearing by an administrative law judge (ALJ). Following a hearing held on January 16, 2013 (R. 45-70), ALJ Michael D. Anderson issued a decision denying the claim on April 25, 2013. (R. 19-40). The Appeals Council denied Daniels's subsequent request for review (R. 1-6). The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

405 (g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. (Doc. 9; Doc. 10). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

To make this determination[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the claimant presently unemployed?
> (2)  Is the claimant's impairment severe?
> (3)  Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the claimant unable to perform his or her former occupation?
> (5)  Is the claimant unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Daniels was born on April 16, 1960. (R. 48). He was fifty-three years old on the date of the ALJ's opinion in this case. (Doc. 40). Daniels has a high school education. (R. 57-58). He served in the United States Army from 1978 to 1981. (R. 57-58,

---

[3]*McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. *See Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990). Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Sullivan*, 493 U.S. at 525 n.3; *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

279). He was stationed in El Paso, Texas, as a supply specialist refueling fixed-wing aircraft; he did not see combat while in the military. (R. 57-58, 279). His past employment history includes work as a concrete and semi-truck driver, a cook, a welder, and a hotel clerk. (R. 68). Daniels alleges that he is disabled due to major depression and post-traumatic stress disorder ("PTSD"). In addition, Daniels has a history of alcohol, cocaine, and cannabis abuse and dependence.

**B.    The Findings of the ALJ**

The ALJ found that Daniels has the following severe impairments: Major Depression, Post Traumatic Stress Disorder, and a history of Alcohol, Cocaine, and Cannabis abuse and dependence. (R. 22). The ALJ concluded that these impairments, including the substance abuse disorders, meet or medically equal the listings found in section 12.09 (substance addiction disorders) and 12.04 (affective disorders) of 20 CFR Part 404, Subpart P, Appendix 1. (R. 22-23). The ALJ determined that, in the absence of substance abuse, Daniels's remaining limitations would be severe but would not meet or medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 23-24). Further, the ALJ determined that, "[i]f the claimant stopped the substance use, and with medication compliance and treatment, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)," with certain limitations. (R. 25). The ALJ determined that, if he stopped substance use, Daniels would not be able to perform his past relevant work (R. 38), but that he would be able to perform

other jobs that exist in significant numbers in the national economy. (R. 39). The ALJ concluded that Daniels was not disabled within the meaning of the Social Security Act because his substance abuse disorder is a contributing factor material to the determination of disability and he would not be disabled if he stopped the substance abuse.

**C.    Issues.**

Daniels presents the following issues for review:

1. Whether the ALJ committed reversible error by improperly rejecting the opinion of Daniels's treating psychiatrist; and

2. Whether the ALJ erred by ignoring portions of the opinion of a consulting physician. (Doc. 12 pp. 5, 13).

### IV. Discussion

**A.    Introduction**

A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11 th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, *e.g.*, the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v.*

*Schweiker*, 662 F.2d 731, 735–36 (11th Cir. 1981).  The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1).

**B.    Substantial Evidence Supports the ALJ's Decision to Reject the Treating Psychologist's Residual Functional Capacity Assessment**

An individual is not considered "disabled" for purposes of social security disability insurance or supplemental security income if alcoholism or drug addiction is "a contributing factor material to the Commissioner's determination that the individual is disabled."  2 U.S.C. § 423(d)(2)(C); 42 U.S.C. § 1382c(a)(3)(J).  Therefore, when the ALJ finds that a claimant is disabled and there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the drug addiction or alcoholism is a contributing factor material to the determination of disability.  20 C.F.R. §§ 416.935(a); 404.1535(a).  The key factor in determining whether alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol. 20 C.F.R. §§ 416.935(b)(1); 404.1535(b)(1).  The ALJ makes this determination by first evaluating which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol.  20 C.F.R. §§ 416.935(b); 404.1535(b). The ALJ then must determine whether any or all of the

6

remaining limitations would be disabling; if the remaining limitations are not disabling, then the ALJ must find that the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. §§ 416.935(b); 404.1535(b). However, if the ALJ determines that the remaining limitations would be disabling, the ALJ must conclude that the claimant is "disabled independent of [his] ... alcoholism and ... [his] ... alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. §§ 416.935(b); 404.1535(b).

As noted in the ALJ's opinion, Daniels has an extensive history of treatment for depression, post-traumatic stress disorder, and substance abuse. In February 2012, during a time when he had relapsed and was not compliant with his mental health treatment (R. 1039-40 1046, 1058), one of Daniels's treating physicians, Dr. Margaret Bok, opined that he was unable to work a full time job due to major depression, PTSD, and polysubstance abuse, though he had been "sober since June" with "sobriety off and on." (R. 888). On January 24, 2013, during another period when Daniels had relapsed and was not compliant with his mental health treatment, Dr. Bok completed a mental residual functional capacity assessment form in which she opined that, as a result of his "current psychiatric/psychological impairment[s]," Daniels had marked limitations in the following functional abilities: ability to relate to other people; ability to maintain concentration, pace and attention for extended periods of at least 2 hours; ability to sustain a routine without special supervision; ability to perform activities within a schedule, maintain regular attendance, and be punctual;

7

understand, carry out and remember instructions; respond appropriately to supervision; respond appropriately to co-workers; respond to customary work pressures; respond appropriately to changes in the work setting; use good judgment on the job; perform complex, repetitive, or varied tasks, and behave in an emotionally stable manner. (R. 1024-25). In support of her opinion, Dr. Bok cited Daniels's history of quitting jobs or being fired and noted that he "cannot cope with stress." (R. 1025). She opined that drug and alcohol abuse were material factors regarding Daniels's mental condition, that Daniels had sustained no permanent damage as a result of drug and alcohol abuse, and that, if drug and alcohol use were to stop, there would be no change in Daniels's functional limitations. (R. 1025).

In his opinion, the ALJ stated that he "agree[d] with Dr. Bok's opinion that the claimaint's drug and alcohol use is a material factor regarding his mental condition. However [the ALJ did] not agree with her opinion that the claimant's level of functioning would not improve in the absence of substance abuse." (R. 35).

Daniels argues that the ALJ erred in rejecting Dr. Bok's opinion that the marked limitations reflected in her residual functional capacity assessment would persist in the absence of substance abuse. Daniels contends that, because Dr. Bok is his treating physician, her February 2012 opinion about his ability to work and her January 2013 opinion regarding his residual functional capacity in the absence of substance abuse are entitled to great weight unless good cause is shown to the contrary. It is true that the medical opinion of a treating physician is entitled to substantial or controlling weight unless the ALJ articulates good cause

for rejecting that opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). However, a treating physician's opinions on legal issues that are reserved to the Commissioner are not considered medical opinions and are not entitled to any special weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). Issues reserved to the Commissioner include opinions that the claimant is "disabled" or "unable to work" and opinions regarding the claimant's residual functional capacity. 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, Dr. Bok's opinion regarding Daniels's ability to work and his residual functional capacity in the absence of substance abuse is not a "medical opinion" and is not entitled to any special weight.[4]

Although the Commissioner is the final authority for determining a claimant's residual functional capacity and whether the claimant can work, the Commissioner *is* required to *consider* "all of the medical findings and evidence that support a medical source's statement" that a claimant is unable to work, as well as all medical source opinions regarding the claimant's residual functional capacity. 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ did so in this case, as is reflected in the ALJ's thorough discussion of the extensive evidence in

---

[4]Despite making arguments to the contrary, Daniels himself appears to recognize this fact. *See* Plaintiff's brief, Doc. 12 p. 9: "The ALJ further erred by stating that 'I agree with Dr. Bok's opinion that the claimant's drug and alcohol use is a material factor regrading his mental condition. However, I do not agree with her opinion that the claimant's level of functioning would not improve in the absence of substance abuse.' (Tr. 34). . . . As an initial matter, the concept of materiality is defined by the Commissioner's regulations and Rulings and is a legal term of art (see 20 C.F.R. §§ 404.1535, 416.935; SSR 13-2p). Although Dr. Bok is Mr. Daniels' treating psychiatrist, she is not a legal expert and is not empowered to make a conclusion regarding materiality. Indeed, the question whether DAA is 'a material factor in regards to the patient's mental condition,' as Dr. Bok stated (Tr. 1025), is not at all the same as the question posed by the regulations, i.e. whether DAA is 'a contributing factor material to the Commissioner's determination that the individual is disabled.' SSR 13-2p, 2013 WL 621536, *2. Thus, the ALJ's reliance upon this portion of Dr. Bok's opinion is erroneous as a matter of law and should be rejected."

this case, including Dr. Bok's opinions.

The ALJ noted that Dr. Bok's February 2012 opinion that Daniels had permanent conditions that prevented him from being able to work at full-time job was entitled to "little weight regarding Daniels's ability to work during periods of sobriety" because that opinion was inconsistent with Dr. Bok's own records, including the fact that Dr. Bok consistently assigned Daniels a Global Assessment Score (GAF) of 55, which is reflective of moderate symptoms and moderate functional limitations. (R. 34). The court notes that, in her February 2012 opinion, Dr. Bok specifically stated that one of the permanent medical conditions that prevented Daniels from being able to work was "polysubstance abuse" "sober since June – sobriety off and on." (R. 888). Thus, Dr. Bok's February 2012 opinion is not a statement of Daniels's ability to work in the absence of substance abuse, and there is no error in the ALJ's conclusion that the opinion was due "little weight *regarding the claimant's ability to work during periods of sobriety*." (R. 34) (emphasis added). In fact, the ALJ's opinion is in complete agreement with Dr. Bok's February 2012 opinion that Daniels is disabled when all of his impairments, *including substance abuse*, are considered. (R. 22-24; R. 888). *See* 20 C.F.R. §§ 416.935(b)(1); 404.1535(b)(1) (providing that the key factor in determining whether alcoholism is a contributing factor material to the determination of a disability is whether the claimant would still be found disabled if he *stopped* using drugs or alcohol).

The ALJ provided the following specific reason for rejecting Dr. Bok's January 2013 opinion regarding Daniel's residual functional capacity in the absence of substance abuse:

10

> On January 15, 2013, the day prior to the hearing, the claimant presented to Dr. Bok and reported that he had had a relapse. (Exhibit 18F) The claimant reported symptoms of depression and being overwhelmed with having to care for his ill father. The claimant reported that he had been off medication for two months. After the hearing, Dr. Bok prepared a Mental Residual Functional Capacity Assessment and opined that the claimant was unable to work because of marked functional limitations. (Exhibit 17F) Dr. Bok also opined that drug and/or alcohol abuse is a material factor in regards to the claimant's mental condition; and that if drug and/or alcohol abuse were to stop, there would not be any change in the claimant's limitations. I agree with Dr. Bok's opinion that the claimant's drug and alcohol use is a material factor regarding his mental condition. However, I do not agree with her opinion that the claimant's level of functioning would not improve in the absence of substance abuse. The record includes periods of sobriety in which the claimant's level of functioning did improve with sobriety.

(R. 34-35).

As noted by the ALJ and confirmed by Dr. Bok's treatment notes, the record does contain evidence that Daniels's level of functioning improved with sobriety. For example, as noted by the ALJ (R. 28), on June 9, 2010, Daniels reported that he had been free of alcohol and illicit drugs and that his depression medicine helped him with motivation. (R. 315). Although he had recently relapsed to substance abuse and quit his post-secondary education program, on June 9, 2010 he was interested in obtaining a letter from his doctor that would allow him to return to school. (R. 315, 317). The ALJ noted that mental health treatment notes from August 2011 through February 2012, a period in which Daniels maintained sobriety, indicated that Daniels experienced improvement in his condition. (R. 28, 34). In August 2011, Daniels moved in with his father, reported that he was doing well, was keeping himself busy by cutting grass and doing yard work and other odd jobs, and

planned to make money by cutting hair. (R. 814). Further, as the ALJ noted (R. 33-34, 37), two consultative examinations were performed while Daniels had been sober for substantial periods of time, and these examinations reflected much more moderate limitations than those assigned by Dr. Bok, whose January 2013 residual functional capacity assessment was completed during a period when Daniels had relapsed and was not compliant with his mental health treatment. In fact, as the ALJ noted, prior to January 2013, Dr. Bok had last seen Daniels in February 2012, and, in January 2013, Daniels had been drinking daily, used marijuana and cocaine, and had not taken any mental health medications in over two months. (R. 1044, 1047, 1051, 1058-59). Notations in Dr. Bok's own records consistently assigned Daniels GAF scores of 55 during periods of sobriety, which were consistent with moderate functional limitations and inconsistent with Dr. Bok's residual functional capacity assessment.

The court has independently reviewed the record and finds that it contains substantial support for the ALJ's conclusions regarding Daniels's residual functional capacity and improved functioning in the absence of substance abuse. This record documents a recurrent cycle in which Daniels's functioning improves with mental health treatment compliance and sobriety. However, when Daniels is noncompliant with his mental health treatment and relapses into substance abuse, he experiences increased symptoms of depression and PTSD, as well as significant impairment in functioning. This cycle is detailed in the margin.[5]

---

[5] *See. e.g.,* 555 (February 9, 2009: Daniels reports no current substance abuse, has untreated depression, and seeks job placement assistance); 473, 536 (February 19, 2009: Daniels checks into in-house

---

treatment for homelessness, depression, and substance abuse; "[H]e has been using alcohol, cocaine and cannabis . . . and has also noted progressive worsening of his mood with comorbid anhedonia, low self esteem, poor energy, decreased libido, and disrupted sleep for the past two months," was "consumed with drinking and drugs then losing motivation in activities"); 189, 320 (March 1, 2009: Daniels obtains a job as a cook); 415 (April 2009: "Daniels seems genuinely interested in maintaining his sobriety and returning to the productive work force. . . Daniels states that he has a good work ethic, but then loses this when alcohol or drugs are involved."); 361 (May 2009: after substance abuse and mental health treatment, diagnosis included "major depressive disorder, recurrent, mild, in remission"); 332 (March 2010: Daniels reports using cocaine); 189, 320 (April 2010: Daniels quit his job as a cook; he reports that he quit due to depression); 301-02 (May 2010: Daniels reports that he has in a state of relapse to alcohol and substance abuse and quit school due to increased depression); 278-79, 320, 317, 320 (May 19, 2010: Daniels reports that he has relapsed to drug and alcohol abuse, was not taking depression medication because he "does not like to take medication," has quit school and his job, and is depressed); 315 (June 9, 2010: Daniels reports that he has been free of alcohol and illicit drugs, that medication has helped him, that he has "improved energy level and improved concentration," and that he would like to try to go back to school); 309, 312, 314 (June 10, 2010: Daniels seeks vocational rehabilitation and "is motivated for employment and within compliance with his [mental health] provider and treatment"); 300, 302 ( June 29, 2010: Daniels has begun taking depression medications and reports that he is free of drug and alcohol use); 189, 816 (July 1, 2010: Daniels began working as a commercial concrete truck driver); 351 (October 2010: Daniels relapsed and began drinking alcohol again daily); 289-91, 816 (April 2011: Daniels reports that he stopped taking medication and stopped reporting for mental health treatment after he got his job driving concrete trucks, he has been drinking alcohol, is depressed again, and has lost his job as a concrete truck driver due to nonattendence); 282-83 (May 4, 2011: Daniels signs up for in-house 90-day substance abuse program; he has been using alcohol, cocaine, and marijuana, and living with his father); 777, 783-85, 787 (June 15, 2011: Daniels checks into in-house substance abuse and mental health program; he reports consuming 3-4 beers everyday and using marijuana; he is now homeless because his father asked him to leave his house due to his alcohol use and failure to contribute financially; Daniels also reports that although he "knows his meds," he has "never" taken outpatient medication appropriately because he has difficulty believing that he should take it and drinks alcohol to treat his depression); 215 (June 15, 2011: Daniels self-reports to social security administration that drinking and drug use affect his ability to do house work and his personal appearance, his ability to be efficient and thorough, causes him to lack motivation and to not "care," and causes him to isolate himself and sink further into depression; he reports that when he drinks and uses drugs it is to treat his depression); 605 (July 19, 2011, during mental health and substance abuse treatment: "At present he feels that he is managing his depression effectively and is gaining physical benefits as well [by treating his depression with exercise rather than medication]. Veteran reports that he has lost approximately 18 pounds since he began his exercise program and he feels really good about himself."); 592 (July 2011: Daniels reports that he has been off drugs, following a better diet, and exercising daily and is feeling well); 811-12 (August 5, 2011: Dr. Denise Perone, Psychiatrist, remarks on his discharge report: "At first, he was willing to try meds, then when he started running on a regular basis, he felt better so felt he no longer needed the meds. After stopping the meds he became more depressed, and just as he started making some progress, he decided to leave the program. This was unfortunate, because this is a man who has many work skills, but since he has been out of the service he has been unable to keep a job for more than 2 months because he gets very depressed & quits - this pattern is reflected in his behavior now, in that he is just getting somewhere in his therapy & he feels compelled to quit. Unfortunately, he did not have any of his issues resolved when he decided it was time to leave so that he will probably be back with us soon when the depression hits him hard again."); 814 (August 8, 2011: Daniels reported that he was doing fine, things were going well, he was able to help around

13

As the ALJ noted, following periods of relapse, Daniels has a history of homelessness and emergency room treatment and treatment at in-house mental health and substance abuse programs, but there is no evidence of episodes of decompensation, emergency room treatment, or inpatient hospitalization for any mental health problem in the absence of substance abuse. (R. 36). Further, as the ALJ noted, Daniels has been able to work during periods when he was sober and compliant with his medications. (R. 36). In sum, this record contains substantial evidence to support the ALJ's findings regarding Daniels's improved residual functional capacity when he maintains sobriety and is compliant with his mental health treatment. (R. 25, 36).

Accordingly, the ALJ applied the correct legal standard by independently assessing Daniels's ability to work and his residual functional capacity in the absence of substance abuse. 20 C.F.R. §§ 416.935; 416.927(d); 404.1535; 404.1527(d). Substantial evidence supports the ALJ's conclusion regarding Daniels's residual functional capacity in the absence of substance abuse. Therefore, the court finds no error in the ALJ's rejection of Dr. Bok's opinions regarding Daniels's ability to work and his residual functional capacity in the absence of substance abuse.

---

the house and was keeping himself busy by cutting grass, doing yard work and odd jobs; he reported that he planned to cut hair to earn money and to attend support groups to maintain his sobriety); 925-28 (December 7, 2011: after Daniels completed a 12 week depression support group in December 2011, and while on medication, Daniels has a negative screening for alcohol abuse and a negative screen for depression; he reports to Dr. Bok that his mood is better and he is functioning better than he was; Dr. Bok assigns a GAF of 55); 1039-40 1046, 1058 (January 15, 2013: Dr. Bok notes that Daniels has applied for disability, relapsed a couple of months ago and has been drinking and using cocaine and marijuana again, has not taken his mental health medications for at least two months, and has not reported to Dr. Bok in close to one year).

**B.     The ALJ Did Not Err By Failing to Adopt Dr. Estock's Opinion Regarding Daniels's Residual Functional Capacity.**

Dr. Daniel C. Clark, Ph.D., performed a consultative examination on September 19, 2011 (862-67). On September 10, 2012, at a time when Daniels reported that he had been sober for one year, Dr. Clark performed another consultative examination and evaluation (including administering the WAIS-IV IQ test) and completed a medical source statement of mental ability to do work-related activities. The ALJ adopted Dr. Clark's September 2012 assessment as the claimant's mental residual functional capacity. (R. 34).

On September 30, 2011, and October 5, 2011, Dr. Robert Estock, M.D., completed a mental residual functional capacity assessment and psychological review technique based on the medical records available at that time, including Dr. Clark's September 2011 consultative evaluation. (R. 868-884). Although the ALJ did not adopt Dr. Estock's 2011 assessments, the ALJ noted that his "findings agree substantially with those of the State Agency medical consultant [Dr. Estock] who also determined that the claimant was not disabled in the absence of substance abuse." (R. 37).

Daniels argues that the ALJ erred as a matter of law by failing to specifically adopt two limitations in Dr. Estock's mental residual functional capacity assessment: a limitation that Daniels "would be expected to miss 1-2 days of work per month due to symptoms of depression," and a limitation that Daniels "would work best with supportive nonconfrontational supervision." (R. 870). The ALJ did not adopt Dr. Estock's residual functional capacity assessment. The ALJ was not obligated to adopt or defer to Dr. Estock's

15

assessment because the residual functional capacity assessment is a legal determination that is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). As explained in Part IV.B. of this memorandum opinion, the ALJ's detailed opinion confirms that the ALJ did independently consider all the evidence and make a determination as to Daniels's residual functional capacity.[6]   Thus, the ALJ did not commit any legal error by not adopting the findings in Dr. Estock's mental residual functional capacity assessment.

## V. Conclusion

For the reasons as stated, the court concludes that the decision of the Commissioner should be affirmed. *See Landry v. Heckler*, 782 F.2d 1551, 1551-52 (11th Cir. 1986) ("Because the factual findings made by the [ALJ] . . . are supported by substantial evidence in the record and because these findings do not entitle [the claimant] to disability benefits under the appropriate legal standard, we affirm.").

The Court will enter a separate final judgment.

Done this 5th day of May, 2015.

                                              /s/Charles S. Coody
                                              CHARLES S. COODY
                                              UNITED STATES MAGISTRATE JUDGE

---

[6] The court notes that the ALJ's opinion does incorporate moderate limitations in his ability to interact with others, including supervisors.